
IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 8, 2016

## CEDRIC WATKINS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2011-A-663     Cheryl Blackburn, Judge**

_____

### No. M2016-00681-CCA-R3-PC
_____

The petitioner, Cedric Watkins, appeals the denial of his petition for post-conviction relief from his first degree premeditated murder conviction, arguing that the post-conviction court erred in finding that he received effective assistance of trial counsel. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT W. WEDEMEYER, J., joined.

David M. Hopkins, Murfreesboro, Tennessee, for the appellant, Cedric Watkins.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Megan M. King, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

In 2013, the petitioner was convicted of the first degree premeditated murder of Thomas Turner and sentenced to life imprisonment. Our direct appeal opinion reveals that the conviction stemmed from the petitioner's having shot the victim, who had bought drugs from him, in the belief that the victim was a "snitch" who might have been responsible for the arrest of two of the petitioner's associates. State v. Cedric Wayne Watkins, No. M2013-01268-CCA-R3-CD, 2014 WL 2547710, at *1-3 (Tenn. Crim. App. June 4, 2014). Among the State's witnesses at trial was the petitioner's associate, William Carter, who testified that after he let the petitioner out of his vehicle at the

victim's hotel, the petitioner came running back to his car carrying a laptop computer, got back inside, and said, "[T]wo shots to the head[;] he ain't talking no more." Id. at *3 (internal quotation marks omitted).

Other State witnesses included Brianna Stanton and Stephanie Littlejohn, who each heard the petitioner make incriminating statements about the killing. Among other things, Ms. Littlejohn testified that the petitioner "told her that he had shot the victim three times." Id. at *2. Ms. Stanton testified that several days before she learned about the victim's death, the petitioner went somewhere with Mr. Carter and then returned to their hotel room where he "said that they 'were all supposed to take it to the grave.'" Id. at *1. Ms. Stanton agreed she had testified at an earlier court hearing that the petitioner "said something 'along the lines of [ ] they had to do what they had to do to somebody who was snitching'" before making the statement about taking the information to their graves. Id. The State also introduced recorded jail telephone calls between the petitioner and Ms. Stanton in which the petitioner "told Ms. Stanton to 'stick to the script' and said that they would 'fight this s*** to the end.'" Id. at *2.

The petitioner presented as a witness in his behalf a woman named Deborah Cox, who testified that Ms. Littlejohn told her that she had shot the victim and that the gun she had used would never be found. Id. at *4.

On January 20, 2015, the petitioner filed a pro se petition for post-conviction relief in which he raised a number of claims, including ineffective assistance of counsel. Following the appointment of post-conviction counsel, he filed an amended petition in which he alleged that trial counsel was ineffective for failing to adequately investigate the case or consult with the petitioner, failing to effectively cross-examine Ms. Cox on inconsistencies in her trial testimonies, not objecting to hearsay testimony from a police detective, and failing to call Clifford Parrish and Lashona Wooten as defense witnesses. The petitioner alleged that Mr. Parrish would have testified that Ms. Littlejohn confessed to him that she killed the victim. The petitioner alleged that Ms. Wooten, who testified at his first trial that resulted in a hung jury, would have testified that she did not see the petitioner at the scene of the crime, but instead "another individual she could identify and an unidentified person." Finally, the petitioner alleged that appellate counsel was ineffective for failing to file a timely Rule 11 application for permission to appeal.

At the evidentiary hearing, appellate counsel testified that she intended to file a Rule 11 application in the petitioner's case but got his case confused with another client's and overlooked it.

Clifford Parrish, a long-time boyfriend of the petitioner's aunt, testified that Stephanie Littlejohn told him that she had committed the murder. He said he did not

impart that information to the petitioner's defense team because he thought Ms. Littlejohn would take the initiative and tell them herself. On cross-examination, he testified he later told the petitioner's aunt about Ms. Littlejohn's confession. He was unsure, however, of when he divulged the information, testifying that it could have possibly been during the first or the second trial.

Lashona Smith,[1] previously known by the married name of Lashona Wooten, testified that she gave testimony at the petitioner's first trial about having seen William Carter driving away from the hotel with a passenger in his vehicle on the day the victim was killed, but she was unable to see who the passenger was. She stated that she was subpoenaed as a witness at the petitioner's second trial, but, although the petitioner's trial counsel spoke to her outside the courtroom, she was never called to testify.

Deborah Cox testified that she testified at both of the petitioner's trials. She said that both trial counsel and his investigator interviewed her and that she was asked at the second trial about Ms. Littlejohn's statement that she had killed the victim and disposed of the gun.

The petitioner testified that his first trial ended in a mistrial after the jury was unable to reach a verdict. He said his family retained a different attorney for his second trial and trial counsel began representing him only twenty-one days before the second trial began. He claimed trial counsel visited him only two times before trial, in visits that lasted thirty minutes or less. According to the petitioner, trial counsel never prepared him for testifying and never even discussed before trial whether or not he would testify. He said he consequently felt unprepared to testify, which is why he opted not to take the stand in his own defense. Had he been prepared and testified, he would have told the jury that he did not kill the victim.

The petitioner also complained about trial counsel's failure to call Ms. Wooten and Mr. Parrish as witnesses and his failure to effectively impeach Ms. Cox's testimony with her testimony from the first trial. He said he wanted trial counsel to call Ms. Wooten as a witness at his second trial because she had testified at his first trial, which resulted in a hung jury, and he believed her testimony would have made a difference in his second trial. He said counsel never explained to him why he failed to call her as a witness.

The petitioner testified he had no knowledge before either of his trials about the information Mr. Parrish provided at the evidentiary hearing, but also no knowledge of

---

[1]This witness's first name is spelled phonetically in the transcript as "Lashawna" but as "Lashona" in the petition for post-conviction relief and in the petitioner's appellate brief.

what kind, if any, investigation trial counsel conducted or if counsel could have discovered Mr. Parrish as a potential witness.  As for Ms. Cox, he believed that counsel should have impeached her testimony at his second trial with her testimony from the first trial.  He explained that in the first trial, Ms. Cox simply testified that Ms. Littlejohn told her that she had committed the crime, while in the second she testified that Ms. Littlejohn told her that she had shot the victim in the back of the head.  The petitioner said he thought trial counsel should have asked Ms. Cox to read from her previous trial testimony to show the jury the discrepancies in her accounts.

The petitioner also complained that trial counsel failed to object to hearsay testimony by Detective Corey Wall about having been told by Chaz Ellis to speak to Ms. Littlejohn about the crime.  Lastly, he claimed that trial counsel fell asleep during his trial, testifying that counsel was "supposed to have been taking notes," but his paper fell to the floor twice while he was sitting at the defense table.

On cross-examination, the petitioner denied that his family retained trial counsel shortly before his second trial because he was not getting along with his former counsel.  Instead, he claimed that trial counsel "showed up alleging that he was his attorney" and when he called his family to inquire, they told him that they had hired him.  The petitioner acknowledged that his first jury had voted 11 to 1 to convict him.  Because his first trial ended in a hung jury, he thought trial counsel should have "follow[ed] the same platform [of the first trial] instead of subtracting from what ha[d] already been laid out as a foundation."  He said he told trial counsel that his words of "stick to the script" meant to tell the truth and that counsel told him he would find someone from the African-American community to testify to that effect.  The petitioner disagreed that Ms. Wooten's testimony that someone else was in the car with Mr. Carter helped the State's case.  On redirect examination, he reiterated his belief that Ms. Cox's testimony from the first trial that she was unable to see who was in the car with Mr. Carter helped his defense in the first trial.

Trial counsel, called as a witness by the State, testified that he had been licensed to practice law for approximately thirty-nine years.  He said he was contacted by the petitioner's aunt and other family members who indicated that the petitioner's relationship with his former counsel was "strained" and asked him to take over the case. During his appearance notice, three weeks before the scheduled trial, the trial court addressed the fact that the trial had been set for a number of months and could not be reset.  Trial counsel stated that he thought his taking on the case was what the petitioner needed and "a positive situation" due to the petitioner's strained relationship with his former counsel.  Former counsel was very cooperative, furnishing him with "everything he had," and trial counsel devoted all of his time from the date he was retained until trial in preparing for the case.

Trial counsel testified that he met with the petitioner three different times, for a total of over three hours, in his preparation for the case. He characterized their meetings as "very productive," testifying that he and the petitioner communicated well and reviewed together the first trial transcript "line by line." Among other things, he and the petitioner discussed the State's evidence against the petitioner, potential witnesses and theories of defense, and which factors in the first trial had not been favorable to the petitioner. The petitioner was very interested in having Ms. Littlejohn and Ms. Cox as witnesses, but he never mentioned Mr. Parrish. Trial counsel said he also "zeroed in" on the petitioner's "stick to the script" statement, spending "the better part" of one or two days trying through his connection with the "Nashville Inner City Ministry" to find someone to testify that in the African-American community the words could be interpreted as "tell the truth as opposed to say what we had planned to say." He could not, however, "find anyone that would agree that they could do that in good conscience."

Trial counsel testified that he considered calling Ms. Wooten as a witness at the second trial. However, after talking with her, he "had . . . chills" based on the way she expressed herself and therefore believed that she would not "be anything but a possible liability" for the petitioner if she testified. He said he spoke with Ms. Cox twice before trial, provided her with gas money to travel to the trial from her home in Kentucky, and called her as witness. He repeated that the petitioner never mentioned Mr. Parrish at all.

Trial counsel further testified that he had extensive conversations with the petitioner about the pros and cons of testifying in his own defense and that it was the petitioner's ultimate decision. In addition, the trial court conducted a "very, very thorough examination" with the petitioner about his decision not to take the stand.

On cross-examination, trial counsel testified he had never tried a first degree murder case with only three weeks of preparation. He said he met with the petitioner either the same day that the petitioner's aunt retained him, or the following day. He also informed the petitioner, upon assumption of the case, "that it was [his] understanding that the Court would not grant a continuance because [he] came into the case." Trial counsel testified that he "would have liked a little more latitude in . . . developing Ms. Cox's testimony," but he was limited by the trial court's rulings. Trial counsel reiterated that Ms. Wooten's demeanor and body language on the day of the trial led him to believe, based on his years of experience, that she would be a liability if he called her as a witness. Finally, trial counsel categorically denied that he at any point fell asleep during the trial.

The petitioner's aunt, Janice Gordon, called as a rebuttal witness by the petitioner, testified that she noticed trial counsel drop his head and start to "drift off" at least three

times during the trial. On cross-examination, Ms. Gordon testified that the petitioner was in agreement with the family's decision to hire trial counsel to replace the petitioner's original counsel, whom they believed was not representing the petitioner well.

On April 4, 2016, the post-conviction court entered an order denying the petition for post-conviction relief based on the allegations of ineffective assistance of trial counsel. The court, however, granted the petitioner a delayed appeal to the supreme court due to appellate counsel's failure to file a Rule 11 application for permission to appeal. That same day, the petitioner filed a timely notice of appeal to this court in which he challenged the post-conviction court's finding that he received effective assistance of trial counsel.

## ANALYSIS

The petitioner argues on appeal that trial counsel was deficient, thereby prejudicing the outcome of his case, for the following: not adequately investigating the case; not preparing the petitioner to testify so that he could explain the damaging "stick to the script" statement; not locating Mr. Parrish as a witness; failing to elicit from Ms. Cox that her statement that the victim was shot in the back of the head, which conflicted with the medical examiner's report, was only Ms. Cox's opinion; not calling Ms. Wooten to testify; failing to object to hearsay testimony by Detective Wall; and falling asleep during the trial. The State responds by arguing that the evidence does not preponderate against the findings and conclusions of the post-conviction court that the petitioner received effective assistance of trial counsel. We agree with the State.

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is de novo, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's

deficient performance prejudiced the outcome of the proceeding.  Strickland v. Washington , 466 U.S. 668, 687 (1984); see State v. Taylor , 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee).  The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms."  Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation.  See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

The post-conviction court addressed each of the petitioner's allegations in its lengthy and detailed order denying relief.  Among other things, the court specifically accredited the testimony of trial counsel over that of the petitioner, finding that trial counsel conducted a thorough investigation, adequately met with the petitioner to review the previous trial transcript and the facts of the case, and effectively communicated with the petitioner about the case, including his options regarding testifying at trial.  The court

-7-

also accredited trial counsel's testimony that he never heard of Mr. Parrish as a potential witness, that he made a strategic decision not to call Ms. Wooten based on her demeanor and attitude on the day of the trial, and that he developed Ms. Cox's testimony to the best of his ability, given the trial court's rulings.

With respect to the petitioner's claim that trial counsel was ineffective for failing to object to hearsay testimony by the police detective, the post-conviction court noted from its review of the trial transcript that "[t]he majority of the testimony concerned how Detective Wall found individual[s'] names in the deceased's phone and went to speak to each one who directed him to the next individual." The court further noted that the detective, whose testimony was "general," did not testify as to what each individual told him, but instead what actions he took based on what each individual said. The court, therefore, concluded that there was "no evidentiary error" in the testimony.

The record fully supports the findings and conclusions of the post-conviction court. Trial counsel was a very experienced trial attorney who conducted a thorough investigation of the facts, reviewed the record from the first trial, and communicated with the petitioner about the facts, defense theories, and the pros and cons of testifying in his own defense. Trial counsel offered a reasonable explanation for why he did not call Ms. Wooten as a witness and how he was limited in his examination of Ms. Cox by the trial court's evidentiary rulings. In sum, we agree with the post-conviction court that the petitioner has not met his burden of demonstrating any deficiencies in counsel's performance or any resulting prejudice to his case.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the post-conviction court denying the petition.

_____
ALAN E. GLENN, JUDGE